UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JASON LEOPOLD**, *et al.*,

    Plaintiffs,

    v.

**DEPARTMENT OF STATE**,

    Defendant.

Case No. 18-CV-1550 (CRC)

### MEMORANDUM OPINION AND ORDER

Reporter Jason Leopold and Buzzfeed News submitted a Freedom of Information Act ("FOIA") request to the Department of State seeking records from two senior Department officials. The State Department withheld portions of the records as privileged under FOIA Exemption 5. Leopold challenged those withholdings, and both sides have moved for summary judgment. Finding neither side the clear winner, the Court will grant both parties' motions in part, deny them in part, and order the State Department to produce certain records and further explain some of its withholdings.

### I. Background

In 2018, Leopold and Buzzfeed filed a FOIA request with the State Department seeking:

(1) All emails sent or received by Brian Hook, senior policy advisor to [the] Secretary of State, and Margaret Peterlin, chief of staff to [the] Secretary of State;

(2) All notes prepared by or for former [*sic*] Brian Hook and Margaret Peterlin in preparation for any meeting they attended;

(3) All meeting minutes and other meeting summaries for meetings attended by Brian Hook and Margaret Peterlin;

(4) Brian Hook and Margaret Peterlin's calendar and appointment book; and

(5) Brian Hook and Margaret Peterlin's phone call log.

1st Kootz Decl. ¶ 6. Many of the requested records relate to President Trump's decision to withdraw the United States from the Iran nuclear deal, though they also touch on far-ranging topics such as the assassination of a senior Iranian official and former President Biden's son Hunter. See Leopold MSJ at 1.

The agency then searched for and produced responsive documents. It withheld portions of those documents under FOIA Exemption 5, claiming that they are shielded by the deliberative process privilege or the attorney-client privilege. See 5 U.S.C. § 552(b)(5). Leopold does not dispute the adequacy of the agency's search. He challenges only its withholdings.

## II. Legal Standard

Summary judgment may be granted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is the typical mechanism to determine whether an agency has met its FOIA obligations. See, e.g., Jud. Watch, Inc. v. CFPB, 60 F. Supp. 3d 1, 6 (D.D.C. 2014).

To obtain summary judgment on its invocation of a FOIA exemption, the agency must first show that the material falls under an enumerated exemption. Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009). Agencies can do so by providing sufficiently detailed declarations. Id. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Jud. Watch, Inc. v. DOJ, 715 F.3d 937, 941 (D.C. Cir. 2013) (quotation marks omitted). Because the primary purpose of FOIA is disclosure, exemptions are construed narrowly. DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015).

Next, the agency must make a "focused and concrete" showing that disclosing the withheld records would cause foreseeable harm. Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370 (D.C. Cir. 2021); 5 U.S.C. § 552(a)(8)(A)(i)(I).

Finally, the agency must also demonstrate that it has produced "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). Agencies must explain why non-exempt material is not reasonably segregable, and "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

## III. Analysis

The Court will begin with whether the State Department has proven that the withheld material falls under Exemption 5 before turning to whether it has demonstrated that disclosure would foreseeably cause harm and that it complied with its duty to disclose segregable materials.

### A. Applicability of Exemption 5

The State Department identifies four categories of information it withheld under Exemption 5. First, it withheld draft materials, including draft speeches, editorials, reports, and other documents. 2d Kootz Decl. ¶ 5. Second, it redacted both draft and final talking points. Id. ¶ 9. Third, it protected other documents that reflect internal deliberations regarding various foreign policy decisions, including emails and other communications. Id. ¶ 13. And fourth, it claimed that certain emails, in addition to being protected by the deliberative-process privilege, are also shielded by the attorney-client privilege. 1st Kootz Decl. ¶ 20. The Court will analyze the three categories of withholdings under the deliberative-process privilege before turning to the attorney-client privilege.

#### 1. *Draft Materials*

The first category of materials that the agency withheld under the deliberative-process privilege includes "drafts of speeches, opinion-editorial articles for publication ('op-eds'),

correspondence, reports, and other material[.]" 2d Kootz Decl. ¶ 5; see Vaughn Index Nos. 2–7, 9–13, 15, 17, 18, 21, 25, 27, 28, 47.

The deliberative-process privilege has three requirements. First, documents must be predecisional, meaning that they were "generated before the agency's final decision on the matter." Reps. Comm., 3 F.4th at 362. Second, documents must be deliberative, in that they were "prepared to help the agency formulate its position[.]" Id. The agency must identify the relevant decision or decision-making process to which the withheld records contributed. See Access Reps. v. DOJ, 926 F.2d 1192, 1196 (D.C. Cir. 1991); Senate of the Com. of Puerto Rico v. DOJ, 823 F.2d 574, 585 (D.C. Cir. 1987). Third, communications withheld under the privilege must be intra- or inter-agency, meaning that they usually must be between government employees. See Am. Oversight v. Dep't of Health & Hum. Servs., 101 F.4th 909, 914 (D.C. Cir. 2024). This third requirement has an important exception known as the "consultant corollary," under which communications with outsiders may nonetheless be shielded if the outsiders "are similarly situated to agency employees in that they have no independent stake in the matter under discussion." Id. at 912.

The first two criteria are met here. The withheld records are predecisional, the Department tells us, because they do "not include the final version that was ultimately released to the public (if a final version was actually released)," and "do not reflect the ultimate policy determination by the Department." 2d Kootz Decl. ¶ 5. They are deliberative because they were prepared to assist the Department in developing positions and strategies on a range of foreign policy matters, including "relations with Iran, Saudi Arabia, and Ukraine, as well as the Administration's broader foreign policy." Id. ¶ 7. These explanations provide a sufficient

logical and plausible link between the withheld draft materials and the Department's predecisional deliberative process.

Leopold raises two objections to these withholdings. His first is unpersuasive. He argues that the agency failed to adequately identify a final decision to which Vaughn Index No. 47 relates. See Leopold MSJ at 15; Leopold Reply at 7. According to the agency, that document is a "draft discussion paper regarding the Deferred Action for Childhood Arrivals ('DACA') program" and relates to "a final decision regarding the DACA program[.]" Vaughn Index No. 47. Leopold relies on Senate of the Commonwealth of Puerto Rico v. DOJ, 823 F.2d 574 (D.C. Cir. 1987), where the D.C. Circuit held that an agency's cursory explanation that a withheld document was a "Report on status of Cerro Maravilla case" was insufficient on its own to invoke the deliberative-process privilege. Id. at 584–85. The Circuit explained that this "briefest of references to [a record's] subject matter . . . will not do." Id. at 585. Here, however, the agency provided more than just a terse summary of the record's contents. It also explained that the record related to an agency decision on the DACA program. To be sure, it did not identify a specific decision, but the D.C. Circuit has made clear that the deliberative-process privilege "does *not* turn on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." Access Reps., 926 F.2d at 1196 (cleaned up, emphasis in original). The Department's explanation as to Vaughn Index No. 47 is therefore adequate.

Leopold's second objection presents a more difficult question: Whether communications between an agency and a then-unconfirmed nominee to a high-level position within the agency can be shielded under the deliberative-process privilege. As Leopold points out, several withheld records include emails and other documents exchanged with members of teams tasked with helping former Secretary of State Mike Pompeo and former Deputy Secretary of State John

Sullivan through their respective confirmation processes.  See Leopold MSJ at 8–10; see also Vaughn Index Nos. 10, 26.  The Department confirmed that those records were sent to individuals outside the executive branch.  See Gov't Reply at 3.  The Court will grant summary judgment to Leopold as to these withholdings.

In American Oversight v. Department of Health and Human Services, 101 F.4th 909 (D.C. Cir. 2024), the plaintiff sought records of exchanges between executive branch agencies and members of Congress.  Id. at 912.  The district court held that those records were shielded under the deliberative-process privilege and the consultant corollary.  Id. at 913.  The D.C. Circuit reversed and sharply limited the consultant corollary in light of the Supreme Court's decision in Department of Interior v. Klamath Water Users Protective Association, 532 U.S. 1 (2001).  As the Circuit explained, Klamath emphasized that the requirement a record be intra- or inter-agency "must be given 'independent vitality,' not treated as 'a purely conclusory term, just a label to be placed on any document the Government would find it valuable to keep confidential.'"  Id. at 915 (quoting Klamath, 532 U.S. at 12).  To give that directive effect and square it with existing circuit precedent, the D.C. Circuit held that the consultant corollary applies only where the outsider does "not have a stake in the outcome of the agency's process that would render its advice on the subject anything other than disinterested.  The inquiry is whether, like an agency employee, the consultant's only 'obligations are to truth and its sense of what good judgment calls for.'"  Id. at 916–17 (quoting Klamath, 532 U.S. at 11).  The Circuit also rejected the government's proposed test, that the corollary apply only where the outsider is adverse to the interests of others before the agency.  Id. at 918.  It held instead that such adversity is merely sufficient—not necessary—to take documents outside of the corollary.  Id.

6

The State Department fails entirely to engage with American Oversight's test for applying the consultant corollary. It instead relies exclusively on a district court ruling in Judicial Watch, Inc. v. Department of State, 306 F. Supp. 3d 97 (D.D.C. 2018), to support its withholding. The agency's reliance on that case is misplaced because the court there applied the governing test prior to the D.C. Circuit's clarifying ruling in American Oversight.

In Judicial Watch, the plaintiff sought copies of records exchanged between the State Department and former Secretary of State Hillary Clinton while her nomination was still pending before the Senate. 306 F. Supp. 3d at 102. The court held that the records were shielded under the consultant corollary. Id. at 111. It explained that, under then-governing D.C. Circuit precedent, the corollary covered the Department's communications with a not-yet-confirmed nominee because the nominee and the agency needed to "align their messages, discuss logistics, and prepare the agency for new leadership." Id. The court also reasoned that applying the corollary to agency-nominee communications was consistent with Klamath because "[a] nominee for a high-level agency position is not an interested party seeking a government benefit at the expense of others, but rather the president's selection for a position who will become an agency decisionmaker so long as she is confirmed by the Senate." Jud. Watch, 306 F. Supp. 3d 113–14 (citing Klamath, 532 U.S. at 12 n.4). In other words, Judicial Watch held that a nominee is a "consultant" for purposes of Exemption 5 for two reasons: (1) nominees and agencies share interests in aligning messaging strategy and preparing for the nominee's future leadership; and (2) nominees are not seeking a benefit at the expense of others before the agency.

Neither of Judicial Watch's reasons for applying the consultant corollary to records exchanged with then-nominee Clinton is sufficient to invoke the corollary following American Oversight. The first fails because the question is no longer whether the outsider and the agency

7

share interests, but whether the outsider has interests of his own that would render his opinions "anything other than disinterested." Am. Oversight, 101 F.4th at 916–17. And the second point is irrelevant because the Circuit rejected the adversity test. See id. at 918.

The Department cannot plead ignorance of American Oversight's prevailing standard. Leopold raised American Oversight in his cross-motion for summary judgment, arguing that it requires the agency to disclose the communications with nominees because a nominee has a self-interested, independent stake in the confirmation process (namely, getting confirmed). Leopold MSJ at 9–10. The Department even cited American Oversight in its reply for the proposition that that D.C. Circuit case law recognizes the consultant corollary but failed to engage with it further. Gov't Reply at 3.

Because Leopold raised this argument in his motion and the agency squandered its opportunity to respond in its reply brief, the Court will treat it as conceded. See Kone v. Dist. of Colum., 808 F. Supp. 2d 80, 83 (D.D.C. 2011) (treating arguments for dismissal as conceded after plaintiff failed to respond to them); Wilkins v. Jackson, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded.") (collecting authorities); see also United States v. Sineneng-Smith, 590 U.S. 371, 375–76 (2020) ("[O]ur system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (cleaned up)).

Given the Department's concession, the Court will grant summary judgment to Leopold as to these communications with nominees. And because the Department asserts no other exemptions as to these records, the Court will order the agency to produce them. See Maydak v.

DOJ, 218 F.3d 760, 761, 767 (D.C. Cir. 2000) (ordering production after the government abandoned its assertion of its lone FOIA exemption and did not identify "extraordinary circumstances" or "a substantial change in the factual context" justifying its failure to invoke another exemption).[1]

  2. *Talking Points*

The second category of materials that the agency withheld under the deliberative-process privilege includes "talking points, recommendations, and suggested answers to potential questions—both in draft and 'final' form[.]" 2d Kootz Decl. ¶ 9; see Vaughn Index Nos. 1–3, 7, 13, 20, 22, 24–27.

The Department properly withheld these materials. They are predecisional because they predate agency officials' final decisions of how to articulate the Department's positions. As the agency explains, these talking points, even in "final" form, "do not themselves constitute the Department's position[.]" 2d Kootz Decl. ¶ 9. They are also deliberative because they were "prepared to assist the authors' supervisors and high-ranking officials of the Department in articulating the Department's official policy[.]" Id. And they are intra- or inter-agency because they were not released outside the government. Id.

---

[1] Because the Department has conceded the issue, the Court expresses no definitive view as to whether American Oversight actually requires disclosure of the withheld communications. The Court observes, however, that withholding communications with nominees may still be permissible even after American Oversight. First, this case is factually very different from American Oversight. That case involved communications with Congress, an independent branch of government. This one involves communications with would-be agency employees who were subsequently confirmed to positions within the agency. Second, the records here could potentially satisfy American Oversight's reformulated test because a nominee seeking confirmation is arguably similarly situated to an employee seeking a promotion within the agency. Third, a nominee who is subsequently confirmed could be considered a *de facto* employee for purposes of Exemption 5 while his nomination is pending. But again, the Department did not raise any of these arguments here. So the Court will leave them for another day.

Leopold raises two quibbles. First, he points out that the Department failed to spell out the relationship between each record's author and its recipients. See Leopold Reply at 5. Maybe so. But the agency made the important part clear: The recipients of these talking points were free to deviate from them and make decisions about how to articulate Department policy. See 2d Kootz Decl. ¶ 9. Leopold claims that Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C. Cir. 1980), "requires [an agency] to identify the purported deliberators' relative seniority." Leopold Reply at 5. Not so. All that case requires is that the agency explain "the role played by the documents in issue in the course of [the agency's deliberative] process." Coastal States, 617 F.2d at 868. Spelling out relative seniority between author and recipient might help the agency meet its burden because "a document from a subordinate to a superior official is more likely to be predecisional." Id. But the agency is not required to do so.

Leopold's second beef also misses the mark. He argues that the Department may have shared talking points outside the executive branch by sending them to "surrogates." See Leopold MSJ at 14. But the Department stated in its declaration that it did not share the talking points outside the executive branch. 2d Kootz Decl. ¶ 9. That declaration is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims[.]" SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

Leopold has not rebutted that presumption. He points to three records that he claims show that the Department sent talking points to surrogates. See Leopold MSJ at 14 (citing Leopold MSJ Exs. 7, 9, 10). But all three appear to be copies of an email chain in which the only mention of surrogates is when a government official says: "Let's *not* send [the talking points] to surrogates tonight though." Leopold MSJ Ex. 7 at 1 (emphasis added); Leopold MSJ Ex. 9 at 2 (emphasis added); Leopold MSJ Ex. 10 at 1 (emphasis added). At most, that sentence

10

could perhaps be stretched to imply that the talking points were sent to surrogates at a later date. But even assuming that such an inference is reasonable, it would require another logical leap to conclude that "surrogates" refers to individuals outside the executive branch entirely, rather than, say, employees in a different agency. Drawing *both* inferences is speculation that cannot be used to rebut the presumption in the agency's favor.

### 3. Other Deliberative Materials

The final category of materials withheld by the agency under the deliberative-process privilege is a catch-all category consisting of email exchanges between employees, employees' calendar entries and invitations, and internal memoranda that reflect "internal deliberations between and among Department officials and other executive branch members regarding foreign policy decisions." 2d Kootz Decl. ¶ 13; see Vaughn Index Nos. 3–6, 9–12, 14–16, 18, 19, 23, 29–46.

Most of these withholdings are adequately explained. The agency explains that these internal communications and other documents were exchanged as part of the agency's process for arriving at various decisions, such as policy decisions on Iranian and North Korean sanctions, Vaughn Index No. 14, a possible response to a *Wall Street Journal* article, Vaughn Index No. 23, and the agency's position on the International Commission Against Impunity in Guatemala, Vaughn Index No. 40. These documents are therefore predecisional and deliberative. Leopold repeats that the agency failed to adequately identify the relevant decision that these records informed, but the Court disagrees. For the reasons discussed above, the agency's specification that these documents assisted the agency's decision-making with regard to specific subject matters is sufficient for purposes of Exemption 5. Finally, because these records were exchanged between executive-branch employees, they are either intra- or inter-agency.

The Court, however, does agree with Leopold that the agency failed to adequately identify the relevant decision for two records: Vaughn Index No. 43, a calendar invitation for a scheduled call, and Vaughn Index No. 45, a set of handwritten notes. Both Vaughn Index entries describe the documents as "deliberative with respect to a final decision regarding the Administration's foreign policy." Vaughn Index Nos. 43, 45. But given that the State Department's raison d'être is developing the Administration's foreign policy, that description amounts to no explanation at all. If such cursory invocations were enough to satisfy FOIA, then virtually any document from the State Department could be withheld on the grounds that it informed some unspecified decision on American foreign policy. Accordingly, the Court needs more from the agency to sustain these withholdings.

The Court also agrees with Leopold that the agency may have improperly withheld factual information. The Department withheld material from the "background" sections of two documents described as "information memorand[a.]" Leopold MSJ at 14–15; see Vaughn Index Nos. 16, 35. Leopold argues that these withholdings include purely factual summaries of background information, which some courts have held cannot be shielded under the deliberative-process privilege. See, e.g., Heartwood, Inc. v. U.S. Forest Serv., 431 F. Supp. 2d 28, 37 (D.D.C. 2006). This argument seems plausible to the Court. For example, one memorandum's background section says: "During the first 100 days of the Trump Administration, the United States has:", followed by a redacted bullet point list. Leopold MSJ Ex. 14 at 2. Given the text introducing it, the bullet point list presumably contains descriptions of actions taken by the Trump Administration. Such a list could contain purely factual information subject to disclosure.

The agency's explanation of these withholdings comes up short. It claims that it has justified these withholdings by explaining that the documents informed certain decisions. See Gov't Reply at 6–7. But its supplemental declaration failed to respond to Leopold's plausible charge that the background sections in these memoranda contain factual information that the agency could potentially disclose. The agency did not, for example, explain that the withheld portions of the background sections reflect the authors' opinions, let alone how they might do so. So while the Department adequately connected the memoranda themselves to deliberative processes, it did not adequately explain the background-section withholdings.

When courts find that an agency has failed to justify its claimed FOIA exemptions, their typical practice is to deny both parties' motions for summary judgment without prejudice and instruct the agency to either produce the withheld portions or file supplemental declarations to fill the gaps identified by the Court. Kolbusz v. FBI, No. 17-cv-319-EGS-GMH, 2021 WL 1845352, at *27 (D.D.C. Feb. 17, 2021) (collecting authorities). The Court will follow that well-trodden path here. The Department must either produce the redacted background material in Vaughn Index Nos. 16 and 35 and full, unredacted copies of Vaughn Index Nos. 43 and 45, or re-move for summary judgment with a more detailed explanation that (1) addresses whether the agency withheld factual information from Vaughn Index Nos. 16 and 35 (and if so, why) and (2) identifies more precisely the decisions or decision-making processes informed by Vaughn Index Nos. 43 and 45.

    4. *Attorney-Client Privilege*

Finally, the Department also withheld under the attorney-client privilege emails between State Department employees "regarding a need to meet with the then-incoming Legal Adviser to obtain her legal advice[.]" 1st Kootz Decl. ¶¶ 20, 22; see Vaughn Index No. 32.

Leopold argues that the attorney-client privilege does not apply to these emails because it applies only to communications between an attorney and a client and does not apply to communications solely between clients.  See In re Kellogg Brown & Root, Inc., 796 F.3d 137, 148–49 (D.C. Cir. 2015).  And as Leopold points out in his cross-motion for summary judgment, the email exchange did not include the incoming Legal Adviser.  Instead, the emails appear to be between non-attorney agency staff (*i.e.*, clients) to plan for a future meeting after the incoming Legal Adviser arrived.  Leopold MSJ Exs. 16, 17, 18.  The State Department did not respond to this argument from Leopold in its reply brief.

Still, the Court will not order production of these emails or rule on Leopold's objections.  The Department also invoked the deliberative-process privilege as to these emails, Vaughn Index No. 32, and Leopold does not challenge that invocation.  Leopold MSJ at 16 n.7.

B.  Foreseeable Harm

Next, the Court concludes that the Department adequately explained why foreseeable harm would result from disclosing these records.  The Department can satisfy this requirement by making "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." Reps. Comm., 3 F.4th at 370.  Agency declarations should "explain the particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes (and, therefore, whether and how their release would harm similar deliberations in the future)." Id. at 372.

Here, the agency met its specific, contextual burden by first explaining in every entry in its Vaughn Index the role that each withheld document played in the agency's decision-making.  It then explained that disclosing these records would hamper those policymaking or strategy

decisions in the future because "line officers and subordinates would temper their opinions and discussions with the knowledge that their views and characterizations would be made public." 2d Kootz Decl. ¶¶ 6, 10, 14; see also Reps. Comm., 3 F.4th at 370 ("The [deliberative-process] privilege reflects . . . an understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." (quotation marks omitted)).  This kind of concrete showing satisfies FOIA.

C. Segregability

Finally, the agency explained that it "conducted a line-by-line review of the documents at issue in this case and has segregated and released all reasonably segregable, non-exempt information."  1st Kootz Decl. ¶ 25.  Leopold does not dispute the agency's account.  The Court therefore finds that the agency produced all reasonably segregable materials.

IV. **Conclusion**

For these reasons, it is hereby

**ORDERED** that [56] Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  It is further

**ORDERED** that [61] Plaintiff's Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  It is further

**ORDERED** that Defendant shall by April 28, 2025, produce unredacted copies of Vaughn Index Nos. 10 and 26.  It is further

**ORDERED** that Defendant shall by April 28, 2025, produce the background sections of Vaughn Index Nos. 16 and 35 and unredacted copies of Vaughn Index Nos. 43 and 45.  Alternatively, Defendant shall renew its motion for summary judgment by that date.  It is further

**ORDERED** that if Defendant chooses to renew its motion, it shall include a supplemental declaration addressing the shortcomings identified by the Court in its opinion. Plaintiff shall file a combined cross-motion for summary judgment and opposition to Defendant's motion by May 28, 2025.  Defendant shall file a combined reply in support of its motion and opposition to Plaintiff's cross-motion by June 27, 2025.  Plaintiff shall file a reply in support of its cross-motion by July 11, 2025.

**SO ORDERED.**

                                                                                              _____
                                                                                              CHRISTOPHER R. COOPER
                                                                                              United States District Judge

Date:  February 26, 2025